UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                              Case No. 19-20452
                                                Honorable Victoria A. Roberts

TREVON BRYANT,

    Defendant.
_____/

**<u>ORDER DENYING DEFENDANT'S MOTION
TO SUPPRESS EVIDENCE [ECF No. 23]</u>**

## I. INTRODUCTION

This case stems from the execution of a search warrant on \*\*\*\*\* Asbury Park in Detroit, Michigan, as part of an investigation into the purchase and possession of unregistered firearms from December 2018-March 2019.

Trevon Bryant ("Bryant") is charged in a one-count indictment with receipt and possession of an unregistered firearm, in violation of 18 U.S.C. § 5861(d).

Before the Court is Bryant's Motion to Suppress Evidence Based on an invalid search warrant. The Court **DENIES** Bryant's motion.

## II. BACKGROUND

**A. The Investigation, Affidavit for Search Warrant, and Search Warrant**

The affidavit for search warrant details the investigation.

It began when the ATF Investigations Center initiated an international firearms investigation pertaining to the website CBTFORCE.COM in early November 2018. The investigation involved the alleged sale, illegal importation, and trafficking of Glock conversion firearms (classified as machine guns) to the general public without the necessary ATF authorization or background checks.

The website advertised a "Glock Auto Switch" with a push button select-fire version of a Glock conversion firearm. This allows the shooter to choose between a semi-automatic and fully-automatic fire. The "contact us" page listed an email address (umoneyboxsale@hotmail.com) and ensured users that "information is kept 100% protected and private." The website shipped products worldwide. Its domain name is registered to an address in Shenzhen, Guangdon, China.

In November 2018, undercover ATF agents purchased two suspected Glock conversion firearms from the website. ATF paid for the weapons through Paypal to an account name JIGNWEIYIDA. The email address

associated with this account is umoneyboxsale@hotmail.com. The weapons arrived in January 2019.

In February 2019, the ATF Firearm Technology Criminal Branch (FTCB) processed four suspected Glock conversion weapons ordered from the website. The FTCB concluded that these weapons – with the conversion kits installed – were a combination of parts designed and intended to be solely and exclusively used for converting a weapon into a machine gun. Further, these weapons had no serial numbers and were not manufactured by Glock.

The FTCB sought assistance from the U.S. Customs and Border Protection (CBP) to identify possible shipments of Glock conversion weapons that might have been shipped into the United States. CBP identified a common shipper.

In March 2019, ATF obtained a search warrant for PayPal Holdings, Inc. The warrant sought records associated with the website's email address. The records obtained showed shipments to an estimated 2,400 customers living in the United States.

PayPal records indicated that Carnord Craig Gordon ("Gordon") purchased a minimum of five Glock conversion weapons from the website

and shipped the items to ***** Asbury Park using an email bearing Gordon's name.

On separate occasions, Gordon made purchases through his email account. He used the same PayPal account, and shipped to the same Asbury Park address. Purchases on three separate dates where traced to Gordon: (1) December 19, 2018, one Glock conversion weapon; (2) January 25, 2019, two Glock conversion weapons, skull balaclava, and a camouflage mask; (3) March 4, 2019, two Glock conversion weapons.

In May 2019, Homeland Security Investigations (HSI) interviewed Gordon. He denied having any knowledge of the Glock conversion kits and claimed to not own a firearm. HSI offered Gordon the opportunity to return the purchased items. However, Gordon again denied having the firearms and PayPal account.

ATF Special Agent Joseph Loy began surveilling the Asbury Park residence. Based upon his training and experience, Loy observed an individual – whom he believed to be Gordon – holding a handgun. Later that day, this individual left the residence with what appeared to be a long gun.

In June 2019, Agent Loy observed Gordon and another person outside the Asbury Park residence. Although Loy could not identify the

person, he later identified the man as Bryant through his Facebook (NoBighomie) and Instagram (nobighomie) accounts. Bryant freely left and entered the Asbury Park residence throughout the day. He posted photos showing an individual firing a fully automatic Glock in the backyard, a video of himself holding a firearm with what appeared to be a silencer attached, and a photo of Gordon and himself with Glock handguns with Glock conversion kits attached.

Loy prepared the affidavit for search warrant; he believed a search of Asbury Park residence would yield illegal weapons. When Loy signed the affidavit, he had years of experience investigating various criminal cases; he summarized his knowledge of weapons operations, gained through experience and training, in the affidavit.

A Magistrate Judge in the Eastern District of Michigan signed the underlying search warrant on June 5, 2019, finding that probable cause existed for the search of ***** Asbury Park based on the affidavit for search warrant.

**B. The Search and Bryant's Arrest**

Officers executed the search warrant on ***** Asbury Park on June 6, 2019. The following account is set forth in the criminal complaint.

Upon entering the home, officers located two individuals – Bryant and Gordon – on the first floor. After officers secured them, they searched the home and located one loaded, Glock 26, 9mm, pistol with a Glock conversion kit, a laser sight attachment, and an extended magazine.

Officers read Bryant his Miranda rights and questioned him about the firearms, narcotics, valuables, and money found in the home. Bryant acknowledged ownership of the firearm and Glock Conversion Kit. He also stated that he fired the firearm, which functioned as a fully automatic weapon.

C. **Procedural History**

The United States filed a criminal complaint on June 6, 2019. On July 2, 2019, a grand jury returned the indictment charging Bryant with receipt and possession of an unregulated firearm.

Bryant moves to suppress the evidence based on an invalid search warrant. The motion is fully briefed.

III. **ANALYSIS**

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon

probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."). Officers must base an arrest and search on probable cause and execute a search with a valid warrant. *See Katz v. United States*, 389 U.S. 347, 357 (1967).

"A basic principle of the Fourth Amendment is that there must be probable cause for a search warrant to issue." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). The Sixth Circuit explained that probable cause for a search warrant "exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *Id.* (citations omitted); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) ("To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.' There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'").

"[W]here an affidavit is the basis for a probable cause determination, that affidavit 'must provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Helton*, 314 F.3d at 819 (quoting *Gates*, 462 U.S. at 239). "When determining whether an affidavit

establishes probable cause, we look only to the four corners of the affidavit." *United States v. Rodriguez–Suazo*, 346 F.3d 637, 648 (6th Cir. 2003). However, "rather than [conducting] a line-by-line scrutiny," the Court reviews the sufficiency of the affidavit based on the "totality of the circumstances." *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001). The Court must afford great deference to an issuing judge's probable cause determination. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc). Indeed, the Sixth Circuit "has long held" that an issuing judge's decision to grant a search warrant "should only be reversed if it was arbitrarily exercised." *Id.*

### A. Probable Cause Supports the Search Warrant

Bryant argues that the search was illegal because probable cause does not support the search warrant. He says: (1) the affidavit relied upon stale information; (2) the affidavit does not establish a nexus between the Asbury Park residence and ongoing criminal activity; and (3) the *Leon* good faith exception is not applicable.

To support those arguments, Bryant says the search warrant does not contain any recitation that officers had determined that ongoing criminal activity was occurring at the Asbury Park residence and that weapons were

8

stored there. Bryant says all evidence obtained was the product of an illegal search and must be suppressed.

The government says the search warrant sufficiently establishes probable cause.

### 1. The Search Warrant Did Not Rely Upon Stale Information

The affidavit contained sufficient corroborating information that allowed the issuing judge to conclude that the inherent nature of the crime and the circumstances of the case established probable cause to issue a search warrant. *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998).

"Instead of measuring staleness solely by counting the days on a calendar, courts must also concern themselves with the following variables: 'the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?), *etc.*'" *Andresen v. State,* 24 Md.App. 128, 331 A.2d 78, 106 (1975) (quoting *Spikes*, 158 F.3d at 923).

These factors are not elements that must be met for the government to avoid suppression of the fruits of a search. Rather, they are

circumstances to be weighed in deciding whether the information in the affidavit was sufficiently fresh to inform the probable cause determination. *United States v. Powell*, 603 F. App'x 475, 478 (6th Cir. 2015) (citing *United States v. Douglas*, No. 16-20436, 2019 WL 1315731, at *5 (E.D. Mich. Mar. 22, 2019)).

Bryant argues that "the length of time between events" made the allegations in the affidavit stale. Even if a significant period has elapsed since a defendant's last reported criminal activity, it is still possible, depending upon the nature of the crime, that a magistrate may properly infer that evidence of wrongdoing is still to be found on the premises. *United States v. Greany,* 929 F.2d 523, 525 (9th Cir.1991) (holding information not stale even though an informant said that two years ago he had remodeled defendant's premises to allow him to grow marijuana on the second floor, with the court emphasizing that the information showed "an ongoing criminal business of a necessarily long-term nature"); *see also United States v. Johnson,* 461 F.2d 285, 287 (10th Cir.1972) (stating the general principle that when "the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant")(quoting *Spikes,* 158 F.3d at 923).

### a. Character of The Crime

The character of the crime shows a continual and ongoing criminal act at the Asbury Park residence.

The "continuous nature of the crime of illegal firearm possession affects the staleness inquiry." *United States v. Goodwin*, 552 F. App'x 541, 545 (6th Cir. 2014). *See United States v. Lancaster*, 145 F. App'x 508, 513 (6th Cir. 2005) (court determined that evidence that defendant who fired a machine gun "two years" earlier was not stale because "firearms are not perishable items" and the affiant's experience that "those who own and possess firearms generally maintain them for long periods of time;" *United States v. Powell*, 603 F. App'x 475 (6th Cir. 2015) (approximately eight-month delay between key drug activity and a search of the defendant's residence for firearms did not render the warrant stale); *United States v. Vanderweele*, 545 F.App'x 465, 469–70 (6th Cir. 2013) (seven-month delay in executing a search warrant for a silencer did not render it stale because "a silencer is like a gun, easily transferrable, but more commonly kept by its owner for a long time.")

The affidavit provides sufficient support for the allegation that Gordon's possession, acquisition, and retention of Glock converters at the Asbury Park residence was a continuous and ongoing criminal offense.

In December 2018, Gordon purchased a Glock Converter. In January 2019, Gordon purchased an additional two Glock conversion weapons, a skull balaclava, and a camouflaged flask. Gordon listed the Asbury Park residence as his shipping address for both purchases. In the same month, Gordon posted a video on Facebook under the account of "Dexter Nard" of an individual, whom law enforcement believed to be Gordon, holding a Glock. In March 2019, Gordon purchased two more Glock conversion weapons under the same name and shipped them to the same address. In April 2019, Gordon posted a video of himself firing a fully automatic Glock in the backyard of the Asbury Park residence. In May 2019, Bryant live-streamed a video of himself holding a firearm with a silencer attached to the weapon, and officers observed Gordon in possession of a firearm outside the home.

Prior to the execution of the search warrant in June 2019, these observations highlight continuous and on-going criminal activity at the Asbury Park residence, and inform the decision to seek a search warrant.

### b. Nomadic or Entrenched

The Court next inquires into whether the suspect's behavior is "nomadic or entrenched." *United States v. Burney*, 778 F.3d 536, 540-41 (6th Cir. 2015). The key consideration is whether the defendant is moving

about or can be expected to return to the same location. *United States v. Greene,* 250 F .3d 471, 480-81 (6th Cir. 2001).

Here, the affidavit supported the conclusion that Bryant was "entrenched." Bryant freely came and left the residence, was observed with Gordon at the residence on numerous occasions, and posted a video in the backyard with a fully automatic Glock. Loy's belief that Bryant was not "nomadic" and would return to the Asbury residence is supported by his observations.

Additionally, based on his training and experience, Special Agent Loy stated that gun owners often keep guns in their homes – making a possessor's residence the site of an ongoing crime. Loy reasonably inferred that Bryant possessed, occupied and/or resided in the premises.

### c. The Item To Be Seized Is Easily Transferable

Another consideration is that officers seized items that were durable and likely to remain in Bryant's possession.

The Court recognizes that because "[f]irearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time," the witness' information regarding the firearms was not stale. *United States v. Goodwin*, 552 F. App'x 541, 545 (6th Cir. 2014). *See United States v. Lancaster* 145 Fed.Appx. 508, 513 (6th Cir.2005)

(information regarding a defendant's possession of a machine gun over two years before the warrant issued was not stale); *United States v. Pritchett,* 40 Fed.Appx. 901, 905–06 (6th Cir.2002) (warrant more than four months after the witness claimed to have last seen the defendant in possession of firearms).

### d. The Place To Be Searched

The final factor the Court considers is whether the place identified by the search warrant is a "mere criminal forum of convenience or secure operational base." There is a greater probability of finding evidence at a location that is "at the heart of the criminal charges." *Abboud,* 438 F.3d at 573–74.

The fact that the place to be searched was a home purported to be Gordon's residence would suggest that it is "a secure operational base," making the warrant's time span less significant. *See Greene,* 250 F.3d at 481 ("The place to be searched was the defendant's home, suggesting that there was some permanence to the defendant's base of operation.") (quoting *United States v. Yates,* 132 F.Supp.2d 559, 565 (E.D.Mich.2001)).

As explained by Special Agent Loy, a weapons owner will often keep the weapons in his or her home. Therefore, a weapons possessor's residence would therefore be a "secure operational base" where the

ongoing criminal activity—illegal possession of a weapon—occurs over a span of time.

These factors weigh against Bryant's staleness argument. The information in the affidavit established a fair probability that the weapons would be found at the Asbury Park residence at the time the magistrate judge issued the warrant.

### 2. The Affidavit Does Establish A Nexus Between the Asbury Park Residence and Ongoing Criminal Activity

Bryant's second argument – i.e., that the affidavit does not establish a nexus between the Asbury Park residence and ongoing criminal activity – lacks merit.

"The critical element in a reasonable search is . . . [whether] there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). A magistrate judge is "entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. Caicedo,* 85 F.3d 1184, 1192 (6th Cir.1996).

Based on the totality of circumstances, there was probable cause to believe weapons would be located at the Asbury Park residence. As

summarized above, the affidavit set forth sufficient facts for the magistrate judge to conclude that a sufficient nexus existed between the evidence sought and the residence. Gordon shipped the weapons to the Asbury Park residence; Gordon and Bryant posted photos and videos on Facebook and Instagram showing them firing these weapons at the home; and Special Agent Loy's experience that owners usually keep weapons in their homes indicates that there was a sufficient nexus between the Asbury Park residence and possession of unlawful weapons.

The Court concludes probable cause supported the search warrant.

**B.     The Good Faith Exception to the Exclusionary Rule Applies**

Because the search warrant was supported by probable cause, the Court need not address whether the good-faith exception to the exclusionary rule applies. *Dyer*, 580 F.3d at 393 (citing *United States v. Pinson,* 321 F.3d 558, 565 (6th Cir. 2003)). However, to be thorough, the Court finds that the exception would apply.

Bryant argues the affidavit did not contain an indicia of probable cause because it relied upon "stale" information and did not "provide any, ripe particularized facts connecting the Asbury Park house to the alleged criminal activity." The Court disagrees.

A magistrate's error in issuing a search warrant does not necessarily require suppression of evidence. *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018); *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004). But, even if an affidavit is found not to establish probable cause, the exclusionary rule would not apply to preclude evidence where law enforcement officers executing the search warrant acted in good faith in relying on the search warrant. *United States v. Leon*, 468 U.S. 897, 905, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (exclusionary rule not applicable when evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective").

*Leon* describes four situations where an officer's reliance on an invalid warrant cannot be considered objectively reasonable: (i) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit;" (ii) "where the issuing magistrate wholly abandoned his judicial role;" (iii) when the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;'" and (iv) when a warrant is "so facially deficient— i.e., in failing to particularize the place to be searched or the things to be seized— that the executing officers cannot reasonably presume it to be valid." *Leon*,

468 U.S. at 923, 104 S.Ct. 3405 (quoting *Brown v. Illinois,* 422 U.S. 590, 610-611, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring)).

PayPal account records showed shipments of Glocks to Asbury Park; police observed Gordon carrying the Glock; the social media posts showed Gordon and Bryant firing these weapons. These instances demonstrate that the affiant was not simply guessing that contraband could be found at the Asbury Park residence. Even if the information in the affidavit did not establish probable cause, it provided a modicum of evidence between Gordon's purchase of Glocks and the Asbury Park residence.

The Court finds that the affidavit had an abundance of indicia of probable cause. Officers executing the search warrant, based on that affidavit, had every reason to presume its validity, and they seized evidence in reasonable and good faith reliance on that warrant.

**IV. CONCLUSION**

The Court **DENIES** Bryant's motion to suppress.

**IT IS ORDERED**.

                                             s/ Victoria A. Roberts
                                             Victoria A. Roberts
                                             United States District Judge

Dated: December 12, 2019