UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Case No. 19-20452
                                   HON. VICTORIA A. ROBERTS

v.

TREVON BRYANT

        Defendant.
_____/

## MEMORANDUM OPINION

This matter is before the Court for sentencing. Three issues are addressed in this Opinion:

1. Does Trevon Bryant ("Bryant") sufficiently plead a "serious harm to the interests of justice," such that the Court should sentence him via videoconferencing under the CARES Act?

2. Should Bryant's guideline range be reduced because he played a mitigating role in criminal activity, even though the Government failed to indict the responsible defendants in one case before one judge, and failed to bring the criminal activity of the other actor to the attention of the Court as related conduct?

3. What is Bryant's correct criminal history category?

**I.    The CARES Act**

On February 10, 2020, Bryant pled guilty to receipt and possession of an unlicensed firearm, in violation of 26 U.S.C. § 5861(d). The Court scheduled sentencing for June 9, 2020.

Although Bryant and the Government entered into a Rule 11 Plea Agreement that calculated his sentencing guideline range as 18-24 months, the Court's Probation Department calculated the guideline range to be 21-27 months, based on additional criminal history uncovered during its investigation and preparation of the Presentence Investigation Report ("PSIR"). This was the correct guideline range given the information the Probation Officer had at the time.

But for reasons that will be discussed below, the Court now finds Bryant's guideline range to be 12-18 months because of his lack of knowledge of the overarching criminal activity, lack of decision-making authority, and minimal participation.

Several weeks after the Court scheduled Bryant's sentencing, the Coronavirus COVID-19 pandemic erupted. In mid-March, courthouses across the country closed, including in the Eastern District of Michigan. This closing drastically altered the manner in which our court could conduct business.

The President declared a national emergency under the National Emergencies Act, 50 U.S.C. § 1601 due to the impact of the Coronavirus COVID-19 pandemic. Congress passed the CARES Act (the "Act") to

address significant changes in how our country's institutions could operate in light of this pandemic.

The Act includes provisions designed to assist the judiciary as it addresses health and safety concerns, while at the same time, it authorizes certain criminal proceedings to move forward with the consent of defendants.

The Act authorized the Judicial Conference of the United States to provide authority to Chief District Judges to permit certain criminal proceedings to be conducted by video or phone teleconferencing upon a finding that emergency conditions with respect to COVID-19 materially affect the functioning of federal courts.

The Judicial Conference made this exact finding on March 27, 2020. Chief Judge Denise Page Hood then issued Administrative Order (20-AO-250), which authorized the use of video teleconferencing and telephone conferencing for all court hearings listed in §15002(b) of the Act.

The Act authorizes video or telephone conferencing under the following conditions: (1) "[t]he defendant, or juvenile, after consultation with counsel, consents to the use of video teleconferencing or teleconferencing for the proceeding; and (2) [t]he presiding judge finds that the proceeding cannot be further delayed without "serious harm to the interests of justice."

On May 19, 2020, under the authority of the Act, Bryant filed a notice of waiver of his right to an in-person court hearing and consent to proceed via videoconference. He requested that the Court proceed with his sentencing on June 9, 2020. He stated that then he would request a time served sentence, and that delaying the sentencing hearing would: unnecessarily prolong the federal litigation; increase the cost of incarceration; expose the U.S. Marshal Service, courthouse staff, and personnel to an individual who had been housed in a prison facility with multiple reported cases of COVID-19; and, deny him and the public the right to an expeditious resolution of the charges. Bryant stated that these reasons present serious harm to the interests of justice and dictate moving forward on June 9, 2020.

The Government objected to proceeding. In a conference with counsel on May 27, 2020, the Assistant United States Attorney stated there would be no serious harm to the interests of justice if Bryant's sentence is delayed, given his guideline range, and that Bryant had served only a handful of days in federal custody since his arrest on June 6, 2019. In fact, the prosecutor argued that the Court would do serious harm to the interests of justice if it did impose a sentence of time served.

The prosecutor directed the Court to *United States v. Emory,* Cr. No. 19-00109 JAO, 2020 WL 1856454 (D. Haw. Apr. 13, 2020).  There, the court declined a request to hold a sentencing by telephone, stating that it could not find that serious harm to the interests of justice would result if defendant's sentence remained set for a later date.  The court concluded that the difference between the requested sentence of time served and a guideline sentence, was a significant gap. *Id.* at *2. ("While the Court understands that Defendant is requesting, instead, a sentence of eight months, this request nonetheless represents a not insignificant downward variance from his potential guidelines range of 12 to 18 months.")

The Court declines to follow *Emory* for several reasons.  One, Bryant's guideline range of 21-27 months is a miscalculation, for mistakes the Court attributes completely to the Government; the true guideline range is 12-18 months. Second, even though on May 27, 2020 the Court had not decided upon a sentence, the fact that Bryant intended to request a time served sentence was not outside the realm of possibilities.  His sentencing memorandum and request for downward variance offered reasons that the Court could justifiably rely upon in imposing a time served sentence: his youth (20 years old); his background; lack of an adult record; and that he was not responsible for the importation of the conversion device attached to

5

the Glock found when a search warrant was executed at the home that he lived in. Credible reasons were offered for the possibility of a time served sentence.

This Court believes that serious harm to the interests of justice could indeed occur if a defendant spends more time in prison than is necessary; after all, the duty of the Court is to impose a sentence that is sufficient but not greater than necessary. If there is a reasonable possibility of a time served sentence, this Court has an obligation to hold the hearing and hear the defendant out – even if a greater sentence is ultimately imposed. (*See also United States v. Taura,* No. 3:19-cr-0034, 2020 U.S. District. LEXIS 78042, at *4 (D.V.I. May 4, 2020) ("[w]ere the court to find that a variance or departure is warranted in this matter, a delay in the sentencing hearing could result in Taura serving a period of time in excess of his ultimate sentence.").

Bryant sufficiently pleads a "serious harm to the interests of justice."

## II.     USSG §3B1.2: MITIGATING ROLE

Because the Government failed to indict Bryant and a related defendant – Craig Gordon ("Gordon") – in the same charging instrument, and failed to identify the cases as companions, the Probation Department was deprived of the opportunity to consider a mitigating role reduction for Bryant

6

in calculating his guidelines. The Court has now done that and reduces the guideline range calculated for Bryant by 4 points. His offense level is 12.

On May 27, 2020, the Court reviewed the PSIR in preparation for a conference with counsel on whether sentencing should proceed by way of video conference. The cover sheet to the PSIR stated there was a related case assigned to Judge Bernard Friedman. The Court immediately contacted the Probation Officer who prepared the report to gather more information about the related case and to determine why one case had not been reassigned so that both would be in front of the same judge.

The Government's explanation was that: two different AUSAs and case agents were involved in the cases; the Government would not introduce substantially similar evidence at trial; the cases did not involve the same or related parties; and the cases did not arise out of the same transaction or occurrence.

Additionally, the Government said:

> ATF was investigating Gordon for purchasing several Glock converter switches. The ATF agents did not seize any evidence during the search of Gordon's house (where Bryant was found and arrested) that would be presented at Gordon's trial. Gordon was charged with importing/purchasing Glock switches. The evidence in Gordon's case consisted of records regarding the importation and purchase of Glock switches, including e-mail accounts, PayPal accounts, shipping records, and other evidence

7

>showing Gordon's purchase of Glock switches online. This evidence would not have played a role in Bryant's trial.

The Government is simply wrong regarding the application of this Court's companion case rule and reads it far too narrowly. Bryant's case does involve related parties and certainly did "arise out of the same transaction or occurrence," triggering the Government's obligation under LR 83.11 (b)(7) (A) (ii) and (C) to bring the later filed Gordon case to the attention of the Court for possible reassignment. Indeed, in opposing Bryant's motion to suppress, the Government devoted approximately 8 pages to the overarching criminal activity of Gordon. [ECF No. 24, PageID.115-123].

The facts are as follows; many of them described are in the nearly identical offense conduct sections of Bryant's and Gordon's PSIRs:

>Since 1986, the ATF has considered Glock conversion devices as machine guns. These devices may only be lawfully possessed by properly licensed Federal Firearms Licensees who have paid the appropriate Special Occupational Tax required for manufacturing, importing, or dealing in National Firearms Act weapons. When attached, the device converts a Glock semiautomatic handgun into a machine gun.

Authorities obtained a federal search warrant for a residence on Asbury Park in Detroit. This warrant stemmed from an investigation related to Gordon and Glock conversion devices, which he purchased.

Law enforcement executed the search warrant on June 6, 2019. They found Bryant at the home and found utility bills in his name and other personal effects. He possessed a Glock handgun, with a conversion device attached. Bryant confessed, provided truthful information to law enforcement, and told authorities that Craig Gordon, his brother, bought the conversion device.

Evidence found at the home indicated that Gordon lived there as well. Bryant admitted to agents he possessed the weapon for protection and that the gun was given to him by a third party after it was used in a murder.

An earlier federal search warrant executed on PayPal Holdings, Inc., indicated that an account in the name of Craig Gordon ordered at least 5 devices, and the devices were shipped to the same Asbury Park residence. Authorities also identified a Facebook account with a video that depicts an individual who appears to be Gordon holding what appears to be a Glock pistol.

In indicting these cases separately and not treating them as companions, the Government signals its belief that Bryant is not eligible for a reduction in his offense level.

The Court disagrees.

Under USSG §3B1.2 Application Note 1, Bryant meets the definition of a participant; he was criminally responsible for the offense. Pursuant to Application Note 2, the criteria for multiple participants is met since "more than one participant was involved in the offense."

Application Note 3 of §2B1.2 states "a defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline." There is no indication Bryant was involved in the purchase, importation, or resale of the devices. Bryant's conduct is limited to the possession of a single device and is limited compared to Gordon.

USSG §3B1.2 allows a court to adjust a sentence for minimal participation or minor participation. Whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case. §3B1.2, Application Note 3(C).

The guidelines set out a non-exhaustive list of factors to understand the totality of circumstances. USSG, §3B1.2, comment (n.3(C)). The list includes: (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and (v) the degree to which the defendant stood to benefit from the criminal activity. *Id.*

1. **The Degree to Which the Defendant Understood the Scope and Structure of the Criminal Activity and The Degree to Which the Defendant Participated in Planning or Organizing the Criminal Activity**

No information suggests that Bryant understood, or was even aware of, the scope and structure of Gordon's criminal activity. Similarly, no evidence suggests Bryant participated in planning or organizing the purchase and shipment of the conversion devices, or for their distribution. No evidence suggests that Bryant knew how many devices Gordon ordered.

11

But the record does suggest that all of these things were within the province of Gordon. The record indicates that Bryant merely possessed one of the devices.

These are important distinctions between Bryant and Gordon; a defendant's role in the offense is measured in comparison to other participants in that relevant conduct. *United States v. Romero,* 704 Fed.Appx. 445, 451 (6th Cir. 2017).

These factors weigh in favor of mitigation.

**2. The Degree to Which the Defendant Exercised Decision-Making Authority or Influenced the Exercise of Decision-Making Authority and the Degree to Which the Defendant Stood to Benefit from the Criminal Activity**

Overwhelming evidence against Gordon includes e-mail accounts, PayPal accounts, and shipping records, which show Gordon was intimately involved with the online purchase and shipping of the conversion devices. In contrast, there is no evidence that points to Bryant's involvement in any purchase, shipping or distribution decisions.

To have influence, a role in the criminal activity is necessary. Since Bryant had a non-existent role in the purchase, shipment and distribution of the conversion devices, he did not exercise any decision-making authority. This can be contrasted with Gordon's decision-making authority. Gordon used his PayPal account to pay for the devices.

12

This is a vital distinction to make; it shows Bryant is substantially less culpable and played a minimal role compared to the average participant in the criminal activity. *Id.* at 450.

If Bryant benefited at all from Gordon's more extensive criminal activity, it is that he obtained a highly dangerous machine gun for personal protection. Nothing suggests he benefited financially from the criminal activity.

This factor weighs in favor of mitigation.

**3. The Nature and Extent of the Defendant's Participation in the Commission of the Criminal Activity, Including the Acts the Defendant Performed and the Responsibility and Discretion the Defendant had in Performing those acts.**

The nature and extent of Bryant's participation in the commission of the overarching criminal activity is limited to possession of the conversion device.

This factor signals Bryant's minimal participation.

All five factors that the Court must consider in determining whether Bryant should have the benefit of a mitigating role in the calculation of his guidelines, weigh in favor of Bryant. Application of the factors leads the Court to conclude that Bryant is the least culpable compared to Gordon. No evidence indicates he had knowledge or understanding of the scope or structure of Gordon's criminal activity, or of any of Gordon's activities. He

13

merely possessed one conversion device. His was clearly a minimal role. USSG §3b1.2(a). Bryant is entitled to a 4-point reduction in his offense level.

### III. Criminal History

The Probation Department placed Bryant in a criminal history category II. It scored two points for a juvenile home invasion conviction. USSG §4A1.2(d)(2)(A). The defense objected. Bryant stated that while he was in a locked juvenile facility for more than one year, his sentence was "Level II probation, and not a custodial sentence."

The Government initially agreed with the Probation Department scoring, but at the sentencing hearing, said that the exact nature of Bryant's sentence could not be determined. The Government joined with Bryant in his request for a criminal history category I.

### IV. CONCLUSION

Bryant's offense level is now 12. His criminal history category is I. His guideline range is 10-16 months.

**ORDERED.**

Date: June 9, 2020          s/ Victoria A. Roberts
                            Victoria A. Roberts
                            United States District Judge